UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

JUANA MORALES,

                      **Plaintiff,**            14—cv-7253 (JGK)

        - against-                   <u>MEMORANDUM OPINION</u>
                                                   <u>AND ORDER</u>

CITY OF NEW YORK, ET AL.,

                    **Defendants.**

_____

**JOHN G. KOELTL, District Judge:**

      On September 8, 2014, Juana Morales, proceeding pro se, a Puerto Rican Hispanic female Special Officer with the New York City Administration for Children's Services ("ACS"), brought this action against the City of New York[1] and a John Doe defendant. Morales filed an Amended Complaint on February 6, 2015. On August 8, 2015, Morales filed a Second Amended Complaint ("SAC"). Morales alleged employment discrimination on the basis of her race, color, national origin, and gender in violation Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") against the City and a John Doe defendant.[2] Morales also asserted state law claims against the

_____

[1] The plaintiff filed her claim against the Administration for Children's Services and its subdivision Division of Youth and Family Justice. However, "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." <u>See</u> N.Y.C. Charter § 396. The plaintiff's claims are construed to have been brought against the City of New York.

[2] The plaintiff failed to exhaust her age discrimination claim under the Age Discrimination in Employment Act of 1967 ("ADEA"). Therefore, this claim is dismissed. Furthermore, there is no individual liability under Title VII. <u>See</u> <u>Sheffield v. Sheriff of Rockland Cnty. Sheriff Dep't</u>, 393 F. App'x 808, 811

City for defamation and violation of Social Services Law § 422
arising from the ACS position statements submitted to the New
York State Division of Human Rights ("NYSDHR") and the Equal
Employment Opportunity Commission ("EEOC") leading up to the
present action. Finally, the SAC asserted a retaliation and
whistleblowing claim under New York Civil Service Law § 75-b
based on the alleged actions taken against Morales after she
complained of coworker misconduct. The defendants moved to
dismiss the SAC pursuant to Rule 12(b)(6) of the Federal Rules
of Civil Procedure for failure to state a claim and failure to
file a timely notice of claim.

                                  I.

     In deciding a motion to dismiss pursuant to Rule 12(b)(6),
the allegations in the complaint are accepted as true, and all
reasonable inferences must be drawn in the plaintiff's favor.
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.
2007). The Court's function on a motion to dismiss is "not to
weigh the evidence that might be presented at a trial but merely
to determine whether the complaint itself is legally
sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.
1985). The Court should not dismiss the complaint if the
plaintiff has stated "enough facts to state a claim to relief

---

n.2 (2d Cir. 2010) (summary order). The plaintiff's claim against the John
Doe defendant must also be dismissed.

                                  2

that is plausible on its face." Bell Atl. Corp. v. Twombly, 550
U.S. 544, 570 (2007). "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009). While the Court should construe the factual allegations
in the light most favorable to the plaintiff, "the tenet that a
court must accept as true all of the allegations contained in
the complaint is inapplicable to legal conclusions." Id.

When faced with a pro se complaint, the Court must
"construe [the] complaint liberally and interpret it to raise
the strongest arguments that it suggests." Chavis v. Chappius,
618 F.3d 162, 170 (2d Cir. 2010) (internal citation and
quotation marks omitted). "Even in a pro se case, however, . . .
threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice." Id.
(citation omitted). Thus, although the Court is "obligated to
draw the most favorable inferences" that the complaint supports,
it "cannot invent factual allegations that [the plaintiff] has
not pled." Id.; see also Seymore v. Dep't of Corr. Servs., No.
11-cv-2254, 2014 WL 641428, at *1 (S.D.N.Y. Feb. 18, 2014).

When presented with a motion to dismiss pursuant to Rule
12(b)(6), the Court may consider documents that are referenced
in the complaint, documents that the plaintiff relied on in

bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Winfield v. Citibank, N.A., 842 F. Supp. 2d 560, 564 (S.D.N.Y. 2012); see also Lawtone-Bowles v. City of New York, Dep't of Sanitation, 22 F. Supp. 3d 341, 344-45 (S.D.N.Y. 2014). "[D]ocuments are incorporated by reference" when a "complaint makes a clear, definite and substantial reference to the documents." Elliott v. Nestle Waters of N. Am., No. 13-cv-6331 (RA), 2014 WL 1795297, at * 7 (S.D.N.Y. May 6, 2014)(internal citation and quotation marks omitted). In this case, the plaintiff submitted several documents and exhibits detailing the events leading up to the present action. With respect to the documents and exhibits discussed in this opinion, the plaintiff made "clear, definite and substantial" references to them in her complaint, and they may therefore be considered. See id. (internal citation and quotation marks omitted).

## II.

The following facts from the SAC are accepted as true for purposes of this motion to dismiss.

## A.

Juana Morales is a Special Officer with ACS. SAC at 3. From August 22, 2005 to January 4, 2014, Morales was stationed at

4

Crossroads Juvenile Detention Center ("Crossroads"). SAC at 7. Some of her responsibilities at Crossroads included patrolling the facility, keeping records, conducting searches of staff, visitors, and the dorms, and providing security support. SAC at 7. At Crossroads, Morales "was on a fair rotation for overtime," and was provided a locker in the women's locker room. SAC at 7. From September 22, 2013 to January 9, 2014, Morales allegedly reported instances of misconduct and abuse by Special Officers at Crossroads. SAC at 6. On September 25, 2013, Morales allegedly called the Justice Center Juvenile Counsel to report an African-American female officer "scratching" the face of a young detainee causing "open lacerations." SAC at 6. On or about November 2, 2013, Morales called the Justice Center to report abuse by an African-American male Juvenile Counselor that was not reported by the Executive Director, who was also an African-American male. SAC at 6.

Shortly thereafter, on November 5, 2013, the New York State Central Registry ("SCR") received an anonymous report that the plaintiff had sexually abused a three year old boy, as well as allegations of drug use, drug sales, and weapon sales. SAC at 4. More specifically, the calls reported that the plaintiff had "sold drugs with the [three] year old boy." SAC at 4. The same anonymous report was made to SCR on December 20, 2013. SAC at 4.

On or about November 14, 2013,[3] the NYPD notified ACS of the
November 5 report, and that the "Manhattan South Narcotics
Bureau would be conducting an investigation into the
allegations." SAC at 4. An investigation conducted by ACS
concluded on December 24, 2013, and found that the allegations
were "[u]nfounded." SAC at 4, 17. The plaintiff alleges that
this necessarily means that the NYPD investigation is also
closed because ACS may not close an investigation until the NYPD
closes their own. SAC at 4.[4]

From December 4, 2013 to December 15, 2013, the plaintiff
reported further instances of alleged work place violence by
staff at Crossroads. SAC at 4. In one alleged instance a male
African-American employee at Crossroads threatened other
officers but "the [m]anagers protected him." SAC at 4. On
December 16, 2013, the plaintiff reported to the Crossroads
Executive Director that detainees were smoking marijuana and
that a member of the Crossroads staff provided contraband. SAC
at 6. The staff member alleged to having provided the
contraband, identified as an "African American" "Male Juvenile

---

[3] The plaintiff alleges that she was interviewed by a detective from the
Manhattan South Special Victims Unit of the NYPD on November 12, 2013. SAC at
4.
[4] On March 20, 2014 the plaintiff obtained a Certificate of Good Conduct from
the NYPD, ostensibly to show the investigation was closed and that she was
cleared to return to supervision of youth. See SAC at 4. The Certificate of
Good Conduct indicates that the plaintiff has no criminal history, but it is
unclear whether this refers to both convictions and open investigations. The
plaintiff does not deny that the investigation occurred, and has stated she
was interviewed by an NYPD detective. SAC at 4.

Counselor," was allowed to continue working with the juveniles at Crossroads. SAC at 6-7.

The plaintiff was notified that she was transferred to 150 William Street on January 2, 2014. SAC at 3. The plaintiff's duties at 150 William Street included "writing reports, receiving emails," and patrolling her assigned floor three times a day. SAC at 7-8. ACS did not provide the plaintiff with new training, a safety vest, or a hat piece shield matching her body shield. SAC at 7. ACS provided the plaintiff a chair on her assigned floor and a locker shared with three other male officers. SAC at 7. Two of the officers were African-American and one was Caucasian. SAC at 7. The plaintiff alleges that the three male officers were provided the "uniform articles" that she was not. SAC at 8. Unlike at Crossroads where she "was on a fair rotation for overtime," SAC at 7, the plaintiff was not on overtime rotation for the six months she spent at 150 William Street. SAC at 7. The plaintiff alleges that the three male officers were on the overtime rotation at 150 William Street. SAC at 7-8. The plaintiff alleges that the denial of overtime rotation caused her a pay reduction, and that her job responsibilities were greatly reduced. SAC at 8. In or about June 2014 the plaintiff took a medical leave that lasted until May 19, 2015. SAC at 11, Dkt. No. 41-4 at 31.

The plaintiff alleges she requested a transfer back to Crossroads several times, but that all her requests were denied. SAC at 8-11. Her position was then filled on July 30, 2014 by an African American female. SAC at 8-10. After the plaintiff's return from medical leave she again submitted a request to transfer back to Crossroads, but she alleges that her request was denied and that two African Americans were hired as Special Officers instead on May 28, 2015. SAC at 11. The plaintiff further alleges that three additional Special Officers were hired in July 2015. SAC at 11.

On January 9, 2014 the plaintiff filed a claim with the NYSDHR. SAC at 3. In its position statement to the NYSDHR, ACS asserted that the reason for the plaintiff's transfer was the allegations against her and the subsequent NYPD investigation. SAC at 4, 6, 25. The plaintiff also filed a Charge of Discrimination with the EEOC and was issued a right to sue letter on September 4, 2014. SAC at 5, 12.[5] The plaintiff alleges that the defendants provided the EEOC with the same explanation for her transfer as they did to NYSDHR. SAC at 4.

On September 8, 2014, the plaintiff filed this lawsuit. The plaintiff has twice received leave to amend her complaint. See

_____

[5] The plaintiff filed a separate Charge of Discrimination with the EEOC on June 5, 2014, see Rowntree Decl. Ex. B., and was issued a Right to Sue letter on November 6, 2014. See Rowntree Decl. Ex. E. The NYSDHR issued a determination finding no probable cause for unlawful discriminatory practices for the plaintiff's claim on July 10, 2014. See Rowntree Decl. Ex. C.

Dkt. No. 23. The First and Second Amended Complaints were filed on February 6, 2015 and August 11, 2015, respectively.

Generously construed, the SAC asserts four causes of action. First, the plaintiff asserts a cause of action for employment discrimination in violation of Title VII arising from her treatment at Crossroads, her transfer to 150 William Street, her work conditions at 150 William Street, and her subsequent transfer requests and their denials. SAC at 3-11. Second, the plaintiff asserts state law claims for defamation. The SAC alleges the plaintiff was defamed when the defendants sent their position statement to the EEOC and NYSDHR stating that the plaintiff was under investigation by the NYPD. SAC at 4, 6, 9, 11. Third, the plaintiff asserts a state law claim for retaliation and whistleblowing arising from her transfer from Crossroads and the subsequent denial of her transfer request to return to Crossroads, which she alleges occurred due to her complaints of staff misconduct. SAC at 4-6, 9-10. Finally, the plaintiff alleges that ACS violated Social Services Law § 422 by disclosing the existence of an "unfounded" ACS report. SAC at 4.

The City of New York moves to dismiss the plaintiff's claims for failure to state a claim and, with respect to the state law claims, for failure to file a timely notice of claim.

### III.

### A.

To establish a prima facie case for employment discrimination under Title VII, a plaintiff must generally show that: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for his or her position; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). However, "a plaintiff is not required to plead a *prima facie* case under McDonnell Douglas . . . to defeat a motion to dismiss." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015); see also Littlejohn v. City of New York, 795 F.3d 297, 310 (2d Cir. 2015). "[T]he 'prima facie case' requirement of McDonnell Douglas [is] applied only at the summary judgment phase because it 'is an evidentiary standard, not a pleading requirement.'" Vega, 801 F.3d at 83 (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002)). Accordingly, "while a discrimination complaint need not allege facts establishing each element of a prima facie case . . . it must at a minimum assert nonconclusory factual matter sufficient to nudge[] [its] claims . . . across the line from conceivable to plausible." Vega, 801 F.3d at 84 (internal citation and quotation marks omitted).

In <u>Vega</u>, the Second Circuit Court of Appeals held that a plaintiff asserting a Title VII discrimination claim must "allege two elements: (1) the employer discriminated against [the plaintiff] (2) because of [the plaintiff's] race, color, religion, sex, or national origin." <u>Id.</u> at 85. The first element is satisfied when an employer takes an adverse employment action against the plaintiff. <u>See</u> <u>id.</u>

In this case, Morales was transferred from Crossroads to 150 William Street. She alleges that her original position at Crossroads came with a host of responsibilities, while her duties at 150 William Street were limited to patrolling her assigned floor three times a day, filing reports, and receiving e-mails. SAC at 7-8. She was also allegedly denied the opportunity to obtain overtime at 150 William Street after being on rotation for overtime at Crossroads. SAC at 7-8. Upon the alleged conclusion of the ACS investigation into possible misconduct by Morales, Morales placed several requests to transfer back to Crossroads and was denied those transfers. These instances sufficiently and plausibly allege adverse actions. <u>See</u> <u>Terry v. Ashcroft</u>, 336 F.3d 128, 138 (2d Cir. 2003) ("Examples of materially adverse changes include . . . 'a demotion evidenced by a decrease in wage or salary, . . . a material loss of benefits, [or] significantly diminished material responsibilities.'" (quoting <u>Crady v. Liberty Nat'l Bank</u>

11

& Tr. Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993)); see also
Beyer v. Cty. of Nassau, 524 F.3d 160, 165 (2d Cir. 2008)("The
*denial* of a transfer may constitute an adverse employment action
. . . when, as here, a plaintiff adduces sufficient evidence to
permit a reasonable factfinder to conclude that the sought for
position is materially more advantageous than the employee's
current position, whether because of prestige, modernity,
training opportunity, job security, or some other objective
indicator of desirability.").

With respect to the second element of a Title VII claim,
"an action is because of a plaintiff's race, color, religion,
sex, or national origin where it was a substantial or motivating
factor contributing to the employer's decision to take the
action." Vega, 801 F.3d at 85 (internal citations and quotation
marks omitted). The plaintiff's protected class does not need to
be the "but-for" cause of the employer's action. Id. at 86.

> [T]he evidence necessary to satisfy th[e] initial
> burden of establishing that an adverse employment
> action occurred under circumstances giving rise
> to an inference of discrimination is minimal. The
> fact that a plaintiff was replaced by someone
> outside the protected class will ordinarily
> suffice for the required inference of
> discrimination at the initial prima facie stage
> of the Title VII analysis, including at the
> pleading stage.

Littlejohn, 795 F.3d at 313 (internal citation and quotation
marks omitted)(second alteration in original). In Littlejohn,

the Second Circuit Court of Appeals found that the plaintiff, an African American, had sufficiently pleaded "an inference of discrimination" by alleging that a white employee had replaced her. Id. at 312-13; see also Carlton v. Mystic Transp., Inc., 202 F.3d 129, 135 (2d Cir. 2000)("[A] plaintiff has demonstrated an inference of age discrimination and thus established a *prima facie* case . . . where the majority of plaintiff's responsibilities were transferred to a younger co-worker."); de la Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs., 82 F.3d 16, 20 (2d Cir. 1996)("As a Puerto Rican, de la Cruz is a member of a protected class. Because de la Cruz was replaced by a black female, he also satisfies the fourth prong of the *prima facie* case."); Lenart v. Coach, Inc., No. 15-cv-1922 (JMF), 2015 WL 5319735, at *6 (S.D.N.Y. Sept. 11, 2015)(finding that a male plaintiff's allegations that the majority of his responsibilities were assigned to a woman after his termination were sufficient to raise an inference of gender discrimination).

In this case, Morales, a Puerto Rican female of Hispanic descent, alleged that she made several requests to transfer back to her shift at Crossroads, but that her position was instead filled by an African-American female. Two other African American Special Officers were hired at Crossroads despite requests by the plaintiff to return. This is sufficient, at the pleading stage, to allege that ACS originally transferred Morales to 150

13

William Street and later refused her requests for a transfer back to her original position at Crossroads because of Morales' race, color, and national origin. See Littlejohn, 795 F.3d at 312-13; Lenart, 2015 WL 5319735, at *6.[6]

The defendants also argue that Morales' Title VII claim should be dismissed because the SAC alleges, and additional evidence submitted by Morales shows, that she was transferred because of a pending NYPD investigation that placed in question her ability to supervise children. The plaintiff responds that the ACS investigation was completed before her transfer and that this conclusion necessarily indicated the result of the NYPD investigation. The Court could not resolve this factual dispute on a motion to dismiss. On a motion to dismiss Morales need not prove that the reasons for her transfer were pretextual because "competing explanations are better evaluated at the summary judgment stage or beyond." Vega, 801 F.3d at 89; see also Brown v. Daikin Am. Inc., 756 F.3d 219, 230-31 (2d Cir. 2014)("That there may be other explanations for the defendants' employment decisions does not render [a plaintiff's] allegations of discrimination inadequate as a matter of law. Whether there

---

[6] The plaintiff also attempts to argue that her transfer was a form of discipline that was more severe than that imposed on other Crossroads employees who were actually suspended. The defendants argue that the comparators were not similarly situated to the plaintiff in all material respects. Because Morales has otherwise sufficiently pleaded an inference of discrimination, it is unnecessary to reach the issue of whether a comparison to other disciplined employees supports an inference of discrimination.

existed non-pretextual, non-discriminatory explanations for the defendants' employment decisions—a question as to which the defendants bear the burden of production . . . is not properly decided on a motion to dismiss for failure to state a claim.").

Although the defendants, and substantial evidence presented by the plaintiff, suggests that the defendants had a non-discriminatory reason for initiating the plaintiff's transfer, this "does not render [the plaintiff's] allegations of discrimination inadequate as a matter of law." Vega, 801 F.3d at 89(internal quotation marks and citations omitted). Construing the allegations in the SAC in the light most favorable to the plaintiff, the SAC sufficiently pleads a Title VII violation based on race, color, and national origin, and the defendants' motion to dismiss the discrimination claim under Title VII is denied.

However, the allegations in the SAC do not raise an inference that Morales was discriminated against because of her gender. The SAC alleges that Morales was initially replaced with a female security officer. SAC at 8-10. The plaintiff has failed to allege any other facts that would support an inference that she was discriminated against because of her gender. The plaintiff has failed to allege plausibly that her disparate treatment, transfer, and the subsequent denial of her transfer

request were "because of" her gender. <u>See</u> <u>Vega</u>, 801 F.3d at 85.
That claim should therefore be dismissed.[7]

B.

The defendants move to dismiss the plaintiff's state law
defamation claim against the City for failure to comply with New
York's notice of claim requirements. <u>See</u> N.Y. Gen. Mun. Law §§
50-e, 50-i. Under New York law, a plaintiff asserting state law
tort claims against a municipal defendant or its employees must
(1) file a notice of claim within ninety days after the claim
arises, and (2) commence the action within one year and ninety
days after the cause of action accrues. <u>Id.</u> New York courts have
held that plaintiffs may seek leave to file a late notice of
claim before or after the action has been commenced, but they
must do so within the applicable statute of limitations period.
<u>See</u> <u>Pierson v. City of New York</u>, 439 N.E.2d 331, 332 (N.Y.
1982); <u>see also</u> N.Y. Gen. Mun. Law § 50-e(5). However,
"[f]ederal courts do not have jurisdiction to hear state law
claims brought by plaintiffs who have failed to comply with the

---

[7] In a supplemental letter, the defendants argued that the plaintiff failed to
exhaust her administrative remedies with respect to her replacement at
Crossroad by raising the issue with the New York State Division of Human
Rights. The defendants urge that the Court not consider the issue or allow
the defendants to make a motion for judgment on the pleadings. The defendants
can make such a motion if they choose, but irrespective of whether a
subsequent denial of a request for a transfer back to Crossroads, and whether
the subsequent hires at Crossroads constitute additional instances of
discrimination, the characteristics of the replacement for the plaintiff
appears to bear directly on the plaintiff's central claim that she was
transferred out of Crossroads because of her race, color, and national
origin.

16

notice of claim requirement, nor can a federal court grant a plaintiff permission to file a late notice of claim." <u>Dingle v. City of New York</u>, 728 F. Supp. 2d 332, 348-49 (S.D.N.Y. 2010).

The plaintiff alleges that she was defamed when the defendants filed their position statement to the NYSDHR and EEOC stating that she was transferred because of an NYPD investigation against her. SAC at 4, 6, 9, 11. The position statements to the NYSDHR and EEOC were submitted on February 25, 2014, and October 9, 2014, respectively. <u>See</u> Dkt. No. 41-2 at 13; Dkt. No. 41-3 at 20. The plaintiff filed her notice of claim on August 5, 2015. SAC at 14. Her filing was more than ninety days after the alleged defamatory position statements were filed. Therefore, the plaintiff's defamation claim must be dismissed.

## C.

The defendants move to dismiss the plaintiff's whistleblowing and retaliation claims for failure to file a timely notice of claim. This Court construes the plaintiff's allegations to fall under New York Civil Service Law § 75-b which states:

> A public employer shall not dismiss or take other disciplinary or other adverse personnel action against a public employee regarding the employee's employment because the employee discloses to a governmental body information: (i) regarding a violation of a law, rule or regulation which violation creates and presents

> a substantial and specific danger to the public
> health or safety; or (ii) which the employee
> reasonably believes to be true and reasonably
> believes constitutes an improper governmental
> action. "Improper governmental action" shall
> mean any action by a public employer or employee,
> or an agent of such employer or employee, which
> is undertaken in the performance of such agent's
> official duties, whether or not such action is
> within the scope of his employment, and which is
> in violation of any federal, state or local law,
> rule or regulation.

N.Y. Civ. Serv. Law § 75-b(2). Pursuant to New York General

Municipal Law §§ 50-e, 50-i, a plaintiff who brings a claim

under § 75-b must serve a notice of claim upon the defendant

within ninety days of the underlying violation. See Griffin v.

City of New York, 880 F. Supp. 2d 384, 405-406 (E.D.N.Y. 2012);

Thomas v. City of Oneonta, 934 N.Y.S.2d 249, 250 (App. Div.

2011); Donas v. City of New York, 878 N.Y.S.2d 360, 360 (App.

Div. 2009).

The plaintiff filed her notice of claim on August 5, 2015,

and included "retaliation" as part of the nature of the claim.

SAC at 14. Any claims of retaliation under § 75-b that occurred

prior to the ninety days before August 5, 2015, would be time-

barred. In particular, the plaintiff's complaint about her

transfer to Crossroads on January 2, 2014, and her early

requests for transfer back to Crossroads would be time barred.

However, the rejection of the plaintiff's final request for

transfer back to Crossroads on May 19, 2015, would not be time barred. SAC at 11.

The defendants also move to dismiss the plaintiff's whistleblower and retaliation claims for failure to state a claim upon which relief can be granted. To bring a claim under § 75-b, the plaintiff must allege:

> (1) an adverse personnel action; (2) disclosure of information to a governmental body (a) regarding a violation of a law, rule, or regulation that endangers public health or safety, or (b) which she reasonably believes constitutes an improper governmental action; and (3) a causal connection between the disclosure and the adverse personnel action.

Wetzel v. Town of Orangetown, No. 06-cv-6117 (SCR), 2010 WL 743039, at *17 (S.D.N.Y. Mar. 2, 2010)(quoting Burns v. Cook, 458 F. Supp. 2d. 29, 44 (N.D.N.Y. 2006)). Section 75-b(1)(d) defines "personnel action" as "an action affecting compensation, appointment, promotion, transfer, assignment, reassignment, reinstatement or evaluation of performance." N.Y. Civ. Serv. Law § 75-b(1)(d). The plaintiff's allegations that she was refused assignment to Crossroads after filing several complaints against co-workers at Crossroads satisfy the requirements of § 75. Morales alleges that she notified her superiors and outside governmental agencies and officials regarding special officers at Crossroads attacking and providing drugs to youths at Crossroads. SAC at 4, 6.

The defendants assert that the plaintiff must show that the refusal to assign her to Crossroads would not have occurred "but for" her complaints. It is unnecessary to determine the level of causation necessary to sustain a claim for violation of § 75-b because the plaintiff has alleged sufficient facts to allege a causal connection between her complaints and the failure to assign her to Crossroads. Indeed, the plaintiff can rely on the some of the same inferences from her Title VII claim. A plaintiff can argue alternative theories in a complaint. Moreover, the plaintiff can point to the volume of her complaints and the pattern and timing of the refusals of her requests to be reassigned to Crossroads.

It is also possible that the plaintiff has attempted to allege a claim under the Workplace Violence Prevention Act ("WVPA"), N.Y. Labor Law § 27-b. That statute generally includes a prohibition against a public employer's retaliating against an employee for brining to the attention of a supervisor a serious violation of a workplace violence protection program. N.Y. Labor Law § 27-b (1). Given the materials submitted by the plaintiff in response to the motion to dismiss, the defendant no longer asserts that the plaintiff has not alleged a violation of the statute. Rather, the defendants asserted in passing that there is no private right of action for violation of the WVPA without citing any relevant case law. Cases in this district have not

conclusively determine whether there is a private right of action. See D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 355 (S.D.N.Y. 2010) (assuming the WVPA provides protection from retaliatory acts); Hakim v. Hall, No. 09-cv-860 (CS)(LMS), 2009 WL 59103010, at *12 (S.D.N.Y. Oct. 23, 2009), adopted by, DD v. Lincoln Hall, No. 09-cv-860 (CS)(LMS), 2010 WL 695027 (S.D.N.Y. Feb. 19, 2010). It is premature to dismiss the plaintiff's WVPA claim at this stage. Whether there is a private right of action under the WVPA is not necessary to decide at this point because the same incidents would be actionable under § 75-b. Accordingly, the defendant's motion to dismiss the WVPA claim is denied without prejudice to renewal.

### D.

The plaintiff alleges that ACS violated Social Services Law § 422 by disclosing the existence of an unfounded report of child abuse which had been filed against her with the SCR. Subject to certain exceptions, § 422 prohibits the disclosure of unfounded reports of child abuse against the subject and other persons named in the reports. N.Y. Soc. Serv. Law § 422(5). The plaintiff has failed to allege a violation of § 422 because the ACS's position statement to the NYSDHR and the EEOC discussed the NYPD investigation against the plaintiff without mentioning the unfounded SCR report. See SAC at 4, 6, 25; Dkt. No. 41-2 at 24; Dkt. No. 41-3 at 25.

Moreover, the defendants also correctly assert that their
position statements to the NYSDHR and EEOC are entitled to
absolute immunity. Submissions "in the course of judicial or
quasi-judicial proceedings[,]" such as an EEOC proceeding, "are
absolutely privileged so long as they are material and pertinent
to the questions involved notwithstanding the motive with which
they are made." Bernstein v. Seeman, 593 F. Supp. 2d 630, 636
(S.D.N.Y. 2009)(quoting Weitz v. Wagner, No. cv-07-1106
(ERK)(ETB), 2008 WL 5605669, at *7 (E.D.N.Y. July 24, 2008));
see also Hinds v. Magna Fabric, Inc., No. 96-cv-1383 (DC), 1997
WL 309378, at *5 (S.D.N.Y. June 9, 1997).

Therefore, the motion to dismiss the plaintiff's § 422
claim should be granted and the plaintiff's claim that the
defendants violated § 422 must be dismissed.

## CONCLUSION

The Court has considered all the parties' arguments. To the extent any other arguments of the parties are not specifically addressed in this opinion, they are either moot or without merit. The defendants' motion to dismiss the Second Amended Complaint is **granted in part and denied in part**. The Clerk of Court is directed to close all pending motions.


Dated:    New York, New York
          August 9, 2016

                              _____/s/_____

                                   John G. Koeltl
                           United States District Judge