UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------
JUANA MORALES,

                Plaintiff,         14-cv-7253 (JGK)

        - v.-                    MEMORANDUM OPINION
                                     AND ORDER
THE CITY OF NEW YORK, ET AL,

                Defendants.
------------------------------------

JOHN G. KOELTL, District Judge:

    On September 8, 2014, Juana Morales, proceeding pro se, a Puerto Rican Hispanic female Special Officer with the New York City Administration for Children's Services ("ACS"), brought this action against the City of New York[1] (the "City") and a John Doe defendant. Morales filed an Amended Complaint on February 6, 2015. On August 11, 2015, Morales filed a Second Amended Complaint (the "SAC"). Morales alleged employment discrimination and retaliation on the basis of her race, color, national origin, and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") against the City and a John Doe defendant. Morales also asserted state law

---

[1] The plaintiff filed her claims against the Administration for Children's Services and its subdivision the Division of Youth and Family Justice. However, "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." See N.Y.C. Charter § 396. The plaintiff's claims are construed to have been brought against the City of New York.

claims against the City for defamation and violation of Social Services Law § 422 arising from the ACS position statements submitted to the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC") leading up to the present action. The SAC also asserted a retaliation and whistleblowing claim under New York Civil Services Law § 75-b and the Workplace Violence Prevention Act, N.Y. Labor Law § 27-b ("WVPA"), based on the alleged actions taken against Morales after she complained of misconduct by ACS personnel. The defendants moved to dismiss the SAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim and failure to file a timely notice of claim. In an Order dated August 9, 2016, the Court granted the defendants' motion to dismiss in part and denied the motion in part.

Specifically, the Court dismissed the plaintiff's age and gender discrimination claims; her claims against the John Doe defendant; her state law defamation claim; certain of her retaliation and whistleblowing claims under § 75-b that were time-barred; and her claim under Social Services Law § 422. See Juana Morales v. City of New York, et al., No. 14-cv-7253, 2016 WL 9651130 (S.D.N.Y. Aug. 9, 2016) ("Morales I"). That left the plaintiff's Title VII claims regarding her race, color, and national origin and her retaliation and whistleblowing claim

2

under § 75-b and the WVPA. The defendants have now moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on certain of the remaining claims.[2]

## I.

The same standards apply to a Rule 12(c) motion for judgment on the pleadings and to a Rule 12(b)(6) motion to dismiss for failure to state a claim. See Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999); Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs., Div. of/& Am. Home Prod. Corp., 850 F.2d 904, 909 (2d Cir. 1988); Narvarte v. Chase Manhattan Bank, N.A., 969 F.Supp. 10, 11 (S.D.N.Y. 1997); see also U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp., 152 F. Supp. 2d 443, 448 (S.D.N.Y. 2001). In Morales I, the Court set out the standards to be applied and applies those standards here. See Morales I, 2016 WL 9651130, at *1-*2.

## II.

The following facts from the SAC are accepted as true for purposes of this motion for judgment on the pleadings.

---

[2] On January 30, 2017 the plaintiff filed a sur-reply in support of her position opposing the City's Motion. Dkt. 86. On February 13, 2017, the City moved the Court by Letter Motion to disregard the plaintiff's sur-reply, or else to give the City leave to respond. The plaintiff's sur-reply did not contribute any new arguments or allegations relevant to this case, and it is unnecessary for the City to respond.

Familiarity with the facts and arguments from Morales I is presumed, and facts are repeated only as necessary.

Juana Morales is a Special Officer with ACS. SAC at 3. From August 22, 2005 to January 4, 2014, Morales was stationed at Crossroads Juvenile Detention Center ("Crossroads"). Id. at 7. Between September 22, 2013 and January 9, 2014, Morales reported instances of misconduct and abuse by Special Officers at Crossroads. Id. at 6. On November 5, 2013, three days after one of the plaintiff's reports of misconduct, the New York State Central Registry ("SCR") received an anonymous report that the plaintiff had sexually abused a three-year-old boy, as well as allegations of drug use, drug sales, and weapons sales. Id. at 4. The same report was made to SCR on December 20, 2013. Id. On or about November 14, 2013,[3] the New York City Police Department ("NYPD") notified ACS of the November 5 report, and that the "Manhattan South Narcotics Bureau would be conducting an investigation into the allegations." Id. An investigation conducted by ACS concluded on December 24, 2013, and found that the allegations were "[u]nfounded." Id. at 4, 17. The plaintiff alleges that this necessarily means that the NYPD investigation

---

[3] The plaintiff alleges that she was interviewed by a detective form the Manhattan South Special Victims Unit of the NYPD on November 12, 2013. SAC at 4.

4

is also closed because ACS may not close an investigation until the NYPD closes its own investigation. Id. at 4.[4]

From December 4, 2013 to December 15, 2013, the plaintiff reported further instances of alleged work place violence by staff at Crossroads. Id. at 4-7. On January 2, 2014, the plaintiff was "served a 'Special Transfer'" to 150 William Street. Id. at 3. The plaintiff alleges that her duties, equipment, and opportunities for overtime were substantially worse at 150 William Street. See id. at 7-8. In or about June 2014, the plaintiff took a medical leave that lasted until May 19, 2015. Id. at 11.

The plaintiff alleges that she requested a transfer back to Crossroads several times but that all her requests were denied in retaliation for filing administrative charges of discrimination, harassment, and workplace violence. Id. at 9. The plaintiff alleges that her position at Crossroads was filled on July 30, 2014, by an African-American female. Id. at 8-10. After the plaintiff's return from medical leave on May 19, 2015, she again submitted a request to transfer back to Crossroads. See id. at 11. While her request was denied, the plaintiff

---

[4] On March 20, 2014, the plaintiff obtained a Certificate of Good Conduct from the NYPD, ostensibly to show the investigation was closed and that she was cleared to return to the supervision of youth. See SAC at 4. The Certificate of Good Conduct indicates that the plaintiff has no criminal history, but it is unclear whether this refers to both convictions and open investigations.

5

alleges that two African-Americans were hired as Special Officers for the "PM tour" on May 28, 2015. Id. at 11. The plaintiff further alleges that three additional Special Officers were hired in July 2015. Id. at 11.

On January 9, 2014, Morales filed a complaint with the NYSDHR. Id. at 3; see also Decl. of Kurt Rose, dated Nov. 28, 2016 ("Rose Decl.") Ex. I. On July 10, 2014, the NYSDHR concluded its investigation into the plaintiff's January 9, 2014 allegations, finding no probable cause of discrimination or retaliation. See Rose Decl. Ex. K. On September 4, 2014, the EEOC adopted the NYSDHR's findings from July 10, 2014 and issued the plaintiff a Right to Sue letter regarding her January 2014 complaint. SAC at 5, 12; see also Rose Decl. Ex. L. On June 5, 2014, the plaintiff filed another Charge of Discrimination with the EEOC. See Rose Decl. Ex. J. The plaintiff alleged that she was being discriminated against on the basis of her race, national origin, and age, and that she was being retaliated against for her January 2014 complaint. The EEOC issued the plaintiff a Right to Sue letter for this charge on November 6, 2014. See Rose Decl. Ex. M. On August 31, 2015, the plaintiff filed another complaint with the NYSDHR. See Rose Decl. Ex. N. The complaint alleged that the City's refusal to transfer the plaintiff back to Crossroads was based on discriminatory and retaliatory reasons. On February 25, 2016, the NYSDHR issued a

6

determination finding no probable cause of unlawful discriminatory or retaliatory practices with respect to her August 31, 2015 complaint. See Rose Decl. Ex. O.

On September 8, 2014, Morales filed this lawsuit. The plaintiff has twice received leave to amend her complaint. The First and Second Amended Complaints were filed on February 6, 2015 and August 11, 2015, respectively. The City now moves under Federal Rule of Procedure 12(c) to dismiss the plaintiff's "replacement" claim and her claim relating to the City's denial of her request to transfer back to Crossroads under Title VII and her remaining retaliation and whistleblowing claims under § 75-b and the WVPA.

### III.

Normally, "[a] Title VII claimant may bring suit in federal court only if he has filed a timely complaint with the EEOC and obtained a right-to-sue letter." Shah v. New York State Dep't of Civil Serv., 168 F.3d 610, 613 (2d Cir. 1999) (citations omitted). However, the Court of Appeals for the Second Circuit has recognized an exception to the precondition that a claimant exhaust the claimant's administrative remedies before pursuing a Title VII claim in federal court where the claim that was not asserted before the EEOC is "reasonably related to those that were filed with the agency." Deravin v. Kerik, 335 F.3d 195,

7

200-201 (2d Cir. 2003) (citation omitted). As the Court of Appeals for the Second Circuit explained:

> Subsequent conduct is reasonably related to conduct in an EEOC charge if: [1] the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; [2] it alleges retaliation for filing the EEOC charge; or [3] the plaintiff "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge."

Alfano v. Costello, 294 F.3d 365, 381 (2d Cir. 2002) (quoting Butts v. City of N.Y. Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1402-03 (2d Cir. 1993), superseded by statute on other grounds as stated in, Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684 (2d Cir. 1998).

The City argues the plaintiff failed to exhaust both her "replacement claim," relating to her allegation that the City hired employees outside her protected class to fill her position at Crossroads, as well as her claim that the City denied her requests to transfer back to Crossroads for discriminatory and retaliatory reasons. See Def.'s Mem. of Law in Supp. of Def.'s Mot. to Dismiss the Second Am. Compl. ("Def.'s Mem. of Law") at 8, 11-12.

The City argues the Court lacks jurisdiction over the plaintiff's allegation that she was replaced at Crossroads by employees outside her protected class because the plaintiff failed to exhaust her administrative remedies by first raising

8

this issue with the NYSDHR or EEOC. The City further contends that the plaintiff's "replacement claim" was not sufficiently related to the other Title VII claims in the plaintiff's administrative charges for the Court to consider it, given the plaintiff's failure to raise that issue with the NYSDHR or EEOC.

However, as the Court explained in Morales I, the Court did not analyze the plaintiff's allegation that she was replaced at Crossroads by employees outside her protected class as a separate adverse employment action. Morales I, 2016 WL 9651130 at *5. Rather, the Court construed the plaintiff's allegation as evidence that "the [relevant] adverse employment action occurred under circumstances giving rise to an inference of discrimination." Id. at *4; see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). As the Court explained: "This is sufficient, at the pleading stage, <u>to allege that ACS originally transferred Morales to 150 William Street and later refused her requests for a transfer back to her original position at Crossroads</u> because of Morales' race, color, and national origin." (emphasis added). Id. at *5. As the Court explained:

> irrespective of whether a subsequent denial of a request for a transfer back to Crossroads, and whether the subsequent hires at Crossroads constitute additional instances of discrimination, the characteristics of the replacement for the plaintiff appears to bear directly on the plaintiff's central claim that she was

9

>transferred out of Crossroads because of her race, color, and national origin.

Id. at *6 n.7.

Because evidence of the alleged replacements at Crossroads is not a basis for a separate claim of an adverse employment action, the Court does not need to determine whether this allegation is "reasonably related" to the plaintiff's administrative charges for purposes of exhaustion. The City also alleges that the plaintiff's position at Crossroads was not in fact filled by replacements who were not in the plaintiff's protected class, but that factual issue cannot be decided on a motion for judgment on the pleadings. Whether the alleged replacements at Crossroads are in fact evidence of the discriminatory intent for the actions at issue in this case depends on all the evidence.

To the extent that the plaintiff attempts to allege that she requested transfers back to Crossroads after she was transferred to 150 William Street, and that those requests were denied for discriminatory or retaliatory reasons, it would not be possible to dismiss such claims as unexhausted. The plaintiff's Second Amended Complaint alleges that her requests to be transferred back to Crossroads were denied for discriminatory and retaliatory reasons, and that her position was filled by others who were not in her protected class. SAC at

10

8-9. The plaintiff does not specify the dates of any of these requests and their denials. The only specific denial that she points to occurred in May 2015. SAC at 11.

It is not possible at this stage of the pleadings to determine which, if any, of the denials were reasonably encompassed in the scope of the administrative investigations. Given the generality of the pleadings and the complaints to the administrative agencies, and the liberality with which complaints to administrative agencies by pro se plaintiffs are construed, at this stage of the case the Court cannot dismiss claims that the plaintiff was denied requests to transfer back to Crossroads based on discriminatory and retaliatory reasons.

The City's motion to preclude evidence of claims for the denial of requests to transfer back to Crossroads or of replacements for the plaintiff at Crossroads is **denied** without prejudice to renewal in motions for summary judgment or motions in limine.

### IV.

#### A.

The plaintiff's only retaliation and whistleblowing claim under New York Civil Service Law § 75-b that survived the City's first motion to dismiss relates to ACS's refusal of the plaintiff's May 19, 2015 request to transfer back to Crossroads. The City now moves to dismiss that claim under § 75-b because

11

the plaintiff is party to a collective bargaining agreement that provides a grievance procedure that is the exclusive means through which the plaintiff may pursue this claim.

Section 75-b prohibits a public employer in New York State from taking adverse personnel action against a public employee in retaliation for the employee's disclosure of illegal activity. N.Y. Civ. Serv. Law § 75-b. However, under § 75-b(3)(a)-(c), a public employee may only challenge such adverse personnel action in court if the employee is not subject to a collective bargaining agreement that prevents the employer from taking such adverse personnel action and requires the employee to address alleged violations of that provision through binding arbitration. Id.; see also Healy v. City of New York Dep't of Sanitation, No. 04-cv-7344, 2006 WL 3457702, at *6 (S.D.N.Y. Nov. 22, 2006) ("Only those employees not party to a collective bargaining agreement may file suit in federal court to enforce their rights under § 75-b.") (citation omitted), aff'd and remanded, 286 F. App'x 744 (2d Cir. 2008); DiGregorio v. MTA Metro-N. R.R., 140 A.D.3d 530 (App. Div. 2016) ("Because plaintiff was subject to a collectively negotiated agreement which contains provisions preventing an employer from taking adverse personnel actions and which contains a final and binding arbitration provision, she was required to bring her claim in arbitration instead of in court.") (quotation marks and

citations omitted); Munafo v. Metro. Transp. Auth., No. 00-cv-0134, 2003 WL 21799913, at *31 (E.D.N.Y. Jan. 22, 2003).

As a Special Officer, the plaintiff was a member of the International Brotherhood of Teamsters, AFL-CIO, Local 237 (the "Union") and subject to a collective bargaining agreement preventing ACS from taking a wrongful disciplinary action and establishing a grievance and arbitration procedure. See Rose Decl. Ex. H. Because the SAC refers to the grievance procedure set forth in that agreement, the Court may consider it on the City's motion for judgment on the pleadings. See SAC at 7; see also Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); A'Gard v. Perez, 919 F.Supp.2d 394, 399 (S.D.N.Y. 2013). The collective bargaining agreement requires the plaintiff to grieve any alleged adverse employment actions through the procedures set out in the agreement. See Rose Decl. Ex. H; see also, N.Y. Civ. Serv. Law § 75-b. As the SAC describes, the Union initiated these grievance procedures. SAC at 7. The plaintiff's claim under § 75-b is therefore **dismissed.**

### B.

The City also moves to dismiss the plaintiff's claim under the WVPA, arguing the alleged retaliation is too temporally remote from the relevant protected activities to infer a causal connection between the two. The WVPA directs public employers to

13

develop a written workplace violence prevention program. N.Y. Labor Law § 27-b(4). Under the WVPA, public employees must report violations of their employer's workplace violence protection program, and "[n]o employer shall take retaliatory action against any employee" because the employee makes such a report. Id. § 27-b(6)(a) & (e). The plaintiff alleges that she reported workplace violence between September 22, 2013 and January 9, 2014. See SAC at 6. Such reports are protected activity under the WVPA. N.Y. Labor Law § 27-b(6)(a) & (e).

As with a claim under § 75-b, claimants must serve a notice of a claim against the City under the WVPA within ninety days of the underlying violation. See N.Y. Municipal Law §§ 50-e, 50-i; see also Morales I, 2016 WL 9651130, at *7; Parise v. New York City Dep't of Sanitation, No. 03-cv-1673, 2007 WL 2746912, at *1 (E.D.N.Y. Sept. 19, 2007), aff'd, 306 F. App'x 695 (2d Cir. 2009) ("[§ 50-e] requires that, as a condition precedent to the commencement of an action against a municipality or any of its employees, a notice of claim be filed with the municipality within ninety days after the claim arises."); Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789, 793-94 (2d Cir. 1999)("Notice of claim requirements are construed strictly by New York state courts . . . Failure to comply with these requirements ordinarily requires a dismissal for failure to

14

state a cause of action.") (quotation marks and citations omitted).

The plaintiff filed her notice of claim on August 5, 2015, and included "retaliation" as part of the nature of the claim. SAC at 14. Any allegations of retaliation under the WVPA that occurred prior to the ninety days immediately preceding August 5, 2015, are time-barred. In particular, the plaintiff's complaint about her transfer to Crossroads on January 2, 2014, and any early requests for transfer back to Crossroads are time-barred. However, the rejection of the plaintiff's final request for transfer back to Crossroads on May 19, 2015 is not time-barred. See SAC at 11.

Courts in this district have not conclusively determined whether there is a private right of action under the WVPA. See Morales I, 2016 WL 9651130, at *8. It is unnecessary to decide that question here because it is clear that the plaintiff has failed to plead a claim of retaliation under the WVPA. Any claim of retaliation would require the plaintiff to show a causal connection between the protected activity and any retaliatory actions. Cf. Feingold v. New York, 366 F.3d 138, 156 (2d Cir. 2004) ("causal connection between the protected activity and the adverse employment action" required for Title VII retaliation claim) (citation omitted); Forrest v. Jewish Guild for the Blind, 819 N.E.2d 998, 1012 (N.Y. 2004) ("a causal connection

15

between the protected activity and the adverse action" required for a retaliation claim under New York State Human Rights Law, Exec. Law § 296[7], and New York City Human Rights Law, New York City Administrative Code § 8-107).

The City argues that, without specific facts plausibly suggesting retaliation, there is an insufficient temporal proximity between the plaintiff's reports of workplace violence from September 2013 to January 2014 and the City's denial of the plaintiff's request to transfer back to Crossroads in May 2015 to infer a causal connection between them. The SAC does not contain any facts directly indicating the City denied the plaintiff's request to transfer back to Crossroads in May 2015 in retaliation for her complaints of workplace violence between September 2013 and January 2014. Because nearly a year and a half passed between the plaintiff's last protected activity and the City's rejection of her request to transfer, there is also no inference of a causal connection between the two based on temporal proximity. See Feliciano v. City of New York, No. 14-cv-6751, 2015 WL 4393163, at *10 (S.D.N.Y. July 15, 2015) ("Under both federal and state case law, where no additional facts are pled, temporal proximity ordinarily requires that the allegedly retaliatory act occur within two months of the plaintiff's protected activity.") (citations omitted); Ashok v. Barnhart, 289 F. Supp. 2d 305, 315 (E.D.N.Y. 2003) (finding

16

adverse employment actions occurring over a year from the plaintiff's last protected activity "irrelevant to the determination of whether Defendant retaliated against Plaintiff") (citations omitted).

The plaintiff's WVPA claim is therefore **dismissed.**

## CONCLUSION

The Court has considered all the parties' arguments. To the extent any arguments of the parties are not specifically addressed in this Opinion, they are either moot or without merit. The defendant's motion for judgment on the pleadings with regard to the Second Amended Complaint is **granted in part and denied in part.** The Clerk of Court is directed to close all pending motions.

**SO ORDERED.**

**Dated:** **New York, New York**
**September 25, 2017**

_____
John G. Koeltl
United States District Judge