UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 30, 2019

JUANA MORALES,

                    Plaintiff,

        - against -

DIVISION OF YOUTH AND FAMILY JUSTICE
et al.,

                    Defendants.

14cv7253 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

The plaintiff, Juana Morales, brought this suit against the
City of New York ("the City") and a John Doe defendant alleging
employment discrimination and retaliation on the basis of
gender, race, color, and national origin under Title VII of the
Civil Rights Act of 1964 ("Title VII"), as well as age
discrimination under the Age Discrimination in Employment Act of
1967. The plaintiff also asserted state law claims against the
City for defamation, violation of New York Social Services Law
§ 422, and retaliation and whistleblowing under New York Civil
Service Law § 75-b and the Workplace Violence Prevention Act
("WVPA"), N.Y. Labor Law § 27-b.

In two previous Orders, the Court dismissed all of the
claims against the John Doe defendant and all but the Title VII
claims against the City for discrimination on the basis of race,
color, and national origin and for retaliation for complaining
about discrimination. The City now moves for summary judgment

1

on these remaining claims.  For the reasons discussed below, the
defendant's motion for summary judgment is **granted.**

I.

The standard for granting summary judgment is well
established.  "The court shall grant summary judgment if the
movant shows that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477
U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs.,
Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  The trial
court's task at the summary judgment motion stage of the
litigation "is carefully limited to discerning whether there are
any genuine issues of material fact to be tried, not to deciding
them.  Its duty, in short, is confined at this point to issue-
finding; it does not extend to issue-resolution."  Gallo, 22
F.3d at 1224.  The moving party bears the initial burden of
"informing the district court of the basis for its motion" and
identifying the matter that "it believes demonstrate[s] the
absence of a genuine issue of material fact."  Celotex, 477 U.S.
at 323.  The substantive law governing the case will identify
those facts that are material and "[o]nly disputes over facts
that might affect the outcome of the suit under the governing
law will properly preclude the entry of summary judgment."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if any evidence in the record from any source would enable a reasonable inference to be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

## II.

The following facts are undisputed for purposes of this motion, unless otherwise indicated.

The plaintiff, who identifies as Hispanic, white, and Puerto Rican, is a Special Officer with the New York City Administration for Children Services ("ACS"). (Def.'s 56.1 ¶¶ 1-2.) From August 2005 to January 2014, the plaintiff was stationed at Crossroads Juvenile Detention Center ("Crossroads") in Brooklyn. (Id. ¶ 3.) On January 6, 2014, the plaintiff was transferred to the 150 William Street ACS facility ("150

3

William") in Manhattan. (Id. ¶ 6.) ACS transferred the plaintiff to 150 William after receiving notice from the New York City Police Department ("NYPD") that an anonymous complaint had been filed against the plaintiff alleging that she was selling guns and drugs out of her home with minors present. (Id. ¶ 8.) ACS wanted the plaintiff to be in a facility where there were no children until the investigation was completed. (Pl.'s 56.1 ¶ 21.)

While the plaintiff was at the Crossroads facility she would typically work the "AM tour," from 9:00 a.m. to 5:00 p.m. Wednesday to Sunday, with Mondays and Tuesdays off. (Def.'s 56.1 ¶ 4.) After she was transferred to the 150 William Facility, she was assigned to work the same hours, but with Saturdays and Sundays off instead of Mondays and Tuesdays. (Id. ¶ 7.)

On February 3, 2014, the NYPD notified ACS that the investigation regarding the plaintiff was closed and that the allegations were determined to be unfounded. (Id. ¶ 13.) The plaintiff was absent from work from June 16, 2014 to May 18, 2015 on workers' compensation leave. (Id. ¶ 14.)

On October 17, 2014, the plaintiff requested a transfer from 150 William back to Crossroads. (Id. ¶ 15.) On October 21, 2014, ACS informed the plaintiff that she was ineligible for a transfer at that time because she was out on extended workers'

4

compensation leave when the request was made. (Id. ¶ 16.) The plaintiff again requested a transfer on May 19, 2015. (Id. ¶ 17.) That request was denied because there was no available shift at Crossroads with the off days requested by the plaintiff. (Id. ¶¶ 19-20.) On November 25, 2015, the plaintiff filed her third request for a transfer. (Id. ¶ 21.) That request was also denied.[1] (Id. ¶ 22; Def.'s Ex. B, at 92.) ACS contends that the plaintiff was ineligible for transfer at the time of the third request because "she was the subject of an open ACS Employment Law Unit investigation surrounding allegations from a[n] ACS youth client that [she] used disparaging and offensive language to describe the youth client's social worker in the youth's presence." (Def.'s 56.1 ¶ 22.) The plaintiff argues that an internal investigation should not have prevented a transfer. (Pl.'s 56.1 ¶ 17.)

The plaintiff claims she was overlooked for a promotion twice in 2016. (Id. ¶ 20.) The plaintiff was later promoted to "Supervising Special Officer" around July 7, 2017. (Id.; Def.'s 56.1 ¶ 32.) In addition, the plaintiff's base salary consistently increased over her years of employment with ACS, including the time after she was transferred to the 150 William facility. (Def.'s 56.1 ¶ 32; Def.'s Exs. E-F.)

---

[1] The dates on which the second and third requests were denied are not specified in the parties' papers.

Although it is not clear from the plaintiff's papers, she appears to allege that other employees were treated more favorably than she. The plaintiff alleges that after she was reassigned to 150 William, her position at Crossroads was filled by a black female, Sharese Jackson. (Pl.'s 56.1 ¶ 23.) Ms. Jackson was allowed to transfer temporarily to Crossroads based on a child-care-hardship accommodation request and worked there from November 27, 2014 until February 15, 2015. (Def.'s 56.1 ¶ 33.) In addition, Special Officer Tasha Stewart, also a black female, was transferred from a different ACS secure juvenile facility to Crossroads on or about July 29, 2014 and assigned the "PM Tour" with Mondays and Tuesdays off. (Id. ¶ 35.) The plaintiff's tour at Crossroads was the "AM Tour." (Id. ¶ 4.)

The plaintiff also mentions Supervising Special Officer Gustavo Diaz, and Special Officers Jonathan Jones, Roy Mullins, Aaron Bryant, and Ricardo Allen in the second amended complaint ("SAC"). (SAC at 7.) However, she does not mention these officers in any of her papers opposing the defendant's motion for summary judgment.

On January 9, 2014, the plaintiff filed a complaint with the State Division of Human Rights ("SDHR"), alleging that ACS's decision to transfer her to 150 William was discriminatory. (Def.'s 56.1 ¶ 42.) Before either the SDHR or the Equal

Employment Opportunity Commission ("EEOC")[2] had issued findings on these charges, the plaintiff filed another complaint with the EEOC on June 5, 2014 alleging discriminatory practices at 150 William. (Id. ¶ 43.) On July 10, 2014, the SDHR concluded its investigation into the initial complaint, finding no probable cause of discrimination or retaliation. (Id. ¶ 44; Def.'s Ex. N.) The EEOC later adopted the SDHR's finding and issued the plaintiff a right-to-sue letter on September 4, 2014 for the January 2014 complaint. (Def.'s 56.1 ¶ 45.) Four days later, the plaintiff initiated this lawsuit. (Id. ¶ 46.)

On November 11, 2014, the EEOC concluded its investigation into the plaintiff's second, June 2014 EEOC complaint and issued her a right-to-sue letter. (Id. ¶ 47.) On August 21, 2015, the plaintiff filed another complaint with the SDHR, alleging that her requests to be transferred back to Crossroad were denied for discriminatory reasons. (Id. ¶ 50.) The SDHR concluded its investigation into the August 2015 complaint on February 26, 2016 and found no probable cause. (Id. ¶ 51.)

The defendants in this action moved to dismiss the SAC on September 11, 2015. (Dkt. No. 32.) In an Order dated August 9, 2016, the Court dismissed the plaintiff's age and gender

---

[2] Complaints of discrimination filed with the SDHR are considered to be cross-filed with the EEOC. See Govia v. Century 21, Inc., 140 F. Supp. 2d 323, 325 n.1 (S.D.N.Y. 2001).

discrimination claims, her claims against the John Doe defendant, her state law defamation claim, certain of her retaliation and whistleblowing claims under New York Civil Service Law § 75-b that were time-barred, and her claim under Social Services Law § 422.  See Morales v. City of New York, No. 14cv7253, 2016 WL 9651130 (S.D.N.Y. Aug. 9, 2016).  The defendants then moved for judgment on the pleadings on the remaining claims, and the Court dismissed the plaintiff's retaliation and whistleblowing claims under § 75-b and the WVPA. See Morales v. City of New York, No. 14cv7253, 2017 WL 4277174 (S.D.N.Y. Sept. 25, 2016).

The City, the only remaining defendant, now moves for summary judgment on the plaintiff's remaining claims of discrimination on the basis of race, ethnicity, and national origin and retaliation under Title VII.  That motion is **granted**.

### III.

Title VII makes it unlawful "for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Title VII discrimination claims are analyzed under the three-part, burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green,

411 U.S. 792 (1973). First, the plaintiff must establish a prima facie case of discrimination. Id. at 802. Second, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the alleged discrimination. Id. Third, the plaintiff must show that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

### A.

To establish a prima facie case of discrimination the plaintiff must show that: (1) she was in a protected class, (2) she was qualified, (3) she suffered an adverse employment action, and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003). The defendant argues that the plaintiff cannot show the third and fourth elements.

### 1.

To allege an adverse employment action, a plaintiff must demonstrate that she was subjected to a "materially adverse change in the terms and conditions of employment." Galabya v. N.Y.C. Board of Educ., 202 F.3d 636, 640 (2d Cir. 2000). Examples of materially adverse employment actions include "termination of employment, a demotion evidenced by a decrease

in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Sanders v. N.Y.C. Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004) (quoting Terry, 336 F.3d at 138); see also Robins v. N.Y.C. Bd. of Educ., No. 07cv3599, 2010 WL 2507047, at *7 (S.D.N.Y. June 21, 2010), aff'd, 606 F. App'x 630 (2d Cir. 2015).

In this case, the plaintiff's temporary reduction in overtime hours following her transfer to 150 William constitutes an adverse employment action.[3] The defendant argues that the plaintiff did not suffer a materially adverse change in her employment as a result of the transfer because the plaintiff was subsequently promoted and saw an increase in base salary, overtime, and total compensation. However, even a temporary reduction in salary can constitute an adverse employment action, see Hill v. Rayboy-Brauestein, 467 F. Supp. 2d 336, 355 (S.D.N.Y. 2006), as can a reduction in overtime even when the employee's base salary remains the same or increases, see Bilingslea v. Ford Motor Co., No. 06cv0556, 2010 WL 4861500, at *7 (W.D.N.Y. Nov. 30, 2010). Because the plaintiff submitted

---

[3] Although the plaintiff was on workers' compensation leave from June 16, 2014 to May 18, 2015 -- which accounts for the overall decrease in her earnings during that time -- the percentage of her income earned from overtime also decreased in 2014 following her transfer. (Def.'s 56.1 ¶¶ 24-29.)

evidence showing that she experienced a temporary reduction in overtime hours and decrease in total pay following her transfer to 150 William, the plaintiff has satisfied the third element of her prima facie case of discrimination.

However, to the extent that the plaintiff argues that the subsequent denials of her transfer requests back to Crossroads were discriminatory, that claim fails to establish an adverse employment action. The plaintiff first requested transfer in October of 2014, over nine months after she was transferred to 150 William. The plaintiff does not argue, nor does the evidence indicate, that she was still being denied overtime during that period. Because the denials of the plaintiff's transfer requests did not result in any diminution in earnings -- and the plaintiff has not submitted evidence establishing that she suffered any other materially adverse change in her employment -- the denials cannot constitute an adverse employment action. See Beyer v. Cty. of Nassau, 524 F.3d 160, 164 (2d Cir. 2008) ("A denial of a transfer may also constitute an adverse employment action, but we require a plaintiff to proffer objective indicia of material disadvantage; 'subjective, personal disappointment[]' is not enough." (quoting Williams v. R.H. Donnelley Corp., 368 F.3d 123, 126 (2d Cir. 2004))).

Although the plaintiff has offered sufficient evidence to satisfy the third element of her prima facie case with respect to her assignment to 150 William, she has failed to present evidence to satisfy the fourth element: circumstances giving rise to an inference of discrimination.

A plaintiff may raise an inference of discrimination by "showing that the employer subjected [her] to disparate treatment, that is, treated [her] less favorably than a similarly situated employee outside [her] protected group." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) (citations omitted). The plaintiff appears to argue that two instances of disparate treatment give rise to an inference of discrimination: (1) other employees who, like the plaintiff, were subjects of open ACS investigations were not transferred from Crossroads, and (2) black employees were allowed to transfer to Crossroads while the plaintiff was denied her transfer request back to Crossroads.[4]

---

[4] The plaintiff also asserts in her opposition papers that black employees were promoted over her. However, the plaintiff admits that she declined a promotion and in fact was later promoted in July of 2017. Moreover, the alleged failures to promote occurred after the plaintiff filed the SAC. To the extent that the plaintiff alleges an additional claim of discrimination arising from these failures to promote, that claim is not properly before the Court. To the extent that the plaintiff asserts that the failures to promote give rise to an inference of discrimination, the plaintiff has failed to submit any evidence supporting such a claim.

First, the plaintiff has not shown that she was treated less favorably than the other employees who were also subjects of open ACS investigations but were not transferred out of Crossroads. The plaintiff alleges in the SAC that this differential treatment gives rise to an inference of discrimination; however, on this motion for summary judgment, the plaintiff has not responded to the defendant's argument contesting that the comparators were in fact treated more favorably than the plaintiff. Indeed, all of the comparators received administrative disciplinary charges and agreed to suspensions of various lengths without pay, while the plaintiff received no such disciplinary actions. Cf. Billue v. Praxair, Inc., No. 07cv2359, 2008 WL 4950991, at *1 (2d Cir. Nov. 20, 2008) (affirming summary judgment dismissing the plaintiff's claims because the plaintiff failed to show that his conduct was materially the same as that of the alleged comparator).

Second, the plaintiff has not shown that she was similarly situated to the employees who were allowed to transfer to Crossroads while the plaintiff was denied such a transfer. One such employee was transferred to work a different shift than the plaintiff worked, and the other employee was only temporarily transferred based on a hardship accommodation request. Thus, these alleged comparators were not similarly situated to the plaintiff. See Graham, 230 F.3d at 39 ("[T]he plaintiff must

show she was 'similarly situated in all material respects' to the individuals with whom she seeks to compare herself." (quoting Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997))); see also Adeniji v. Admin. for Children Servs., N.Y.C., 43 F. Supp. 2d 407, 425-26 (S.D.N.Y.) (granting summary judgment for ACS because the plaintiff failed to present evidence that similarly situated employees outside of his protected class were treated favorably with respect to transfers), aff'd sub nom. Adeniji v. Admin. For Children's Servs., 201 F.3d 430 (2d Cir. 1999).

Accordingly, the plaintiff has failed to show circumstances giving rise to an inference of discrimination.

### 3.

Moving beyond the prima facie case, the defendant argues that it has articulated a legitimate, nondiscriminatory reason for transferring the plaintiff. When rebutting a plaintiff's prima facie case of discrimination, "the employer's burden is satisfied if he simply explains what he has done," and "produce[s] admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Burdine, 450 U.S. at 256-57 (quotation marks omitted). However, the proffered reasons "must be clear and reasonably specific." Id. at 257

(citing Loeb v. Textron, Inc., 600 F.2d 1003, 1011-12 n.5 (1st Cir. 1979)).

Here, the defendant has presented specific, nondiscriminatory reasons for transferring the plaintiff to 150 William and refusing to transfer her back to Crossroads, and the plaintiff has not rebutted these reasons or shown that they were pretextual. The plaintiff was transferred from Crossroads in response to an anonymous complaint received by the NYPD alleging that the plaintiff was selling guns and drugs out of her home with minors present. The transfer was designed to ensure that the plaintiff was not around children during the pendency of that investigation. This was a legitimate, nondiscriminatory reason to transfer the plaintiff. Likewise, the defendant proffers legitimate reasons for the denials of each of the plaintiff's transfer requests. The defendant denied the October 2014 request because the plaintiff was out on workers' compensation leave at the time and was therefore ineligible for transfer.[5] The defendant denied the May 2015 request because the plaintiff requested a shift with off days that were unavailable.

---

[5] ACS appears to have a policy of rejecting transfer requests when the employee requesting the transfer is out on workers' compensation leave. (Def.'s Ex. B, at 82.) Accordingly, ACS's reason for denying the plaintiff's request was legitimate and nondiscriminatory. See Raytheon Co. v. Hernandez, 540 U.S. 44, 51-52 (2003) (holding that the application of a facially neutral employment policy is a legitimate reason for an employment action for purposes of a disparate treatment claim).

Finally, the defendant denied the November 2015 request because the plaintiff was the subject of an ongoing ACS investigation involving the alleged use of offensive language to describe a youth client's social worker.

Thus, the defendant's reasons for transferring the plaintiff to 150 William and denying her requests to transfer back to Crossroads are legitimate and nondiscriminatory. The plaintiff does not challenge any of the defendant's proffered reasons or submit any evidence from which a reasonable jury could conclude that they were actually a pretext for unlawful discrimination.

**B.**

The plaintiff also argues that the defendant denied her transfer requests back to Crossroads in retaliation for filing claims of discrimination against the defendant with the EEOC. To establish a prima facie case of retaliation under Title VII, the plaintiff must show that (1) she participated in a protected activity, (2) the defendant was aware of the plaintiff's protected activity, (3) the defendant took an adverse employment action against the plaintiff, and (4) there was "a causal connection between the protected activity and the adverse employment action." Mazyck v. Metro. Transp. Auth., 893 F. Supp. 2d 574, 591 (S.D.N.Y. 2012). The defendant argues that

the plaintiff cannot satisfy the third element because no adverse employment action was taken against her.

1.

The plaintiff has not shown that she suffered an adverse employment action in retaliation for filing complaints with the EEOC.

To establish an adverse action under Title VII's antiretaliation provision, a plaintiff must show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). This standard is broader than the adverse employment action requirement in the Title VII discrimination context because the action in question need not affect the terms and conditions of employment in order to be considered adverse. Id. at 64 (holding that the antiretaliation provision "is not limited to discriminatory acts that affect the terms and conditions of employment"); Kessler v. Westchester Cnty. Dep't of Soc. Servs., 461 F.3d 199, 207 (2d Cir. 2006); Gelin v. Geithner, No. 06cv10176, 2009 WL 804144, at *20 (S.D.N.Y. Mar. 26, 2009), aff'd, 376 F. App'x 127 (2d Cir. 2010). However, "trivial harms" such as "petty slights, minor

annoyances, and simple lack of good manners" are not sufficient for actionable retaliation claims. White, 548 U.S. at 68.

Even under the broader standard in the retaliation context, the plaintiff has failed to show that the denials of her request to be transferred back to Crossroads constitute an adverse employment action. The plaintiff was promoted and saw a salary increase in the years following her transfer to 150 William. Moreover, unlike with her discrimination charge, the plaintiff cannot use the initial reduction in overtime to support a claim of retaliation; as previously noted, her transfer requests all came after the plaintiff had resumed receiving overtime in an amount comparable to what she had been receiving at Crossroads. The plaintiff has not provided evidence showing that a reasonable employee would have found the transfer denials materially adverse, and thus she has failed to establish the third element of her prima facie retaliation case.

**2.**

The defendant also argues that it has provided legitimate, non-retaliatory reasons for denying the plaintiff's transfer requests. The defendant states that the plaintiff was ineligible transfer when she made the October 17, 2014 transfer request because she was out on extended workers' compensation leave at the time the transfer request was made; the second request was denied because there was no opening at Crossroads

for the shift the plaintiff requested; and the plaintiff was ineligible for a transfer following the November 25, 2015 request because she was the subject of an open ACS Employment Law Unit investigation.

In response, the plaintiff appears to contest these proffered reasons by arguing that other employees who did not engage in the protected activity were allowed to transfer to Crossroads. However, as explained above, one employee was transferred to work a different shift than the plaintiff worked, and the other received only a temporary hardship-accommodation transfer. Thus, the plaintiff has failed to show that the defendant's proffered reasons are pretextual. See Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (affirming summary judgment dismissing the plaintiff's claims where employer offered "valid, unrebutted reasons for its actions" and plaintiff "put forward nothing other than conclusory allegations to suggest a causal relationship" between the protected activity and the adverse action).

## IV.

Finally, the defendant argues that the Court lacks jurisdiction over the plaintiff's allegations regarding the denials of her transfer requests because the plaintiff has not exhausted her administrative remedies. A plaintiff must file an employment discrimination claim first with the EEOC before

pursuing a claim under Title VII.  42 U.S.C. § 2000e-5(e); <u>Gomes v. Avco Corp.</u>, 964 F.2d 1330, 1332-33 (2d Cir. 1992); <u>Deravin v. Kerik</u>, 335 F.3d 195, 200 (2d Cir. 2003).  Plaintiffs must also receive a right-to-sue letter from the EEOC to proceed with a Title VII claim in federal court.  42 U.S.C. § 2000e-5(f)(1); <u>Baldwin Cty. Welcome Ctr. v. Brown</u>, 466 U.S. 147, 149 (1984).

In this case, the plaintiff filed three administrative complaints.  In the first two complaints -- filed with the SDHR on January 9, 2014 and EEOC on June 5, 2014 -- the plaintiff complained only about her transfer to 150 William.  Those claims were exhausted, and the plaintiff received a right-to-sue letter for each complaint.  In her third complaint, filed with the SDHR on August 21, 2015, the plaintiff alleged for the first time that her requests to be transferred back to Crossroad were denied for discriminatory reasons.  The SDHR concluded its investigation on February 26, 2016 and found no probable cause for the plaintiff's claim.  A complaint filed with the SDHR is deemed to be cross-filed with the EEOC.  <u>Govia</u>, 140 F. Supp. 2d at 325 n.1.  However, the plaintiff did not receive a right-to-sue letter from the EEOC after the SDHR found no probable cause for her third complaint.  Therefore, the defendant argues that the plaintiff cannot assert her claims for the plaintiff's transfer-denial claims.

While receipt of a right-to-sue letter is a statutory prerequisite to filing a Title VII claim, the requirement can be subject to equitable modification if the EEOC fails to issue a letter after the plaintiff has requested one. Ishikawa v. N.Y.C. Dep't of Cultural Affairs, No. 91cv7269, 1993 WL 362393, at *4-5 (S.D.N.Y. Sept. 14, 1993). It is unclear in this case why the plaintiff did not receive a right-to-sue letter after the EEOC concluded its investigation into the February 2016 charge. Nonetheless, the plaintiff has not submitted evidence showing that she attempted to obtain the letter or that the EEOC erroneously refused to issue her one. Thus, the plaintiff has not exhausted her administrative remedies and cannot bring claims based on her August 21, 2015 complaint. See Crisci-Balestra v. Civil Serv. Emps. Ass'n, No. 07cv1684, 2008 WL 413812, at *3-4 (E.D.N.Y. Feb. 13, 2008) (dismissing a Title VII claim for failure to exhaust administrative remedies when the plaintiff did not provide evidence showing that she requested a right-to-sue letter or that the EEOC erroneously refused to issue one); see also Hourahan v. Ecuadorian Line, No. 95cv10698, 1997 WL 2518, at *5-6 (S.D.N.Y. Dec. 31, 1996) (declining to equitably toll the statute of limitations for a Title VII claim when the "plaintiff failed to act diligently" by not contacting the EEOC for almost two years to ensure that proper procedures

had been executed) (citing South v. Saab Cars USA, Inc., 28 F.3d 9 (2d Cir. 1994)).

Although a plaintiff has not exhausted her administrative remedies, she may still pursue her claim in federal court if that claim is "reasonably related" to claims alleged in the complaint with the EEOC. Deravin, 335 F.3d at 200-01. Under Butts v. N.Y.C. Dep't of Hous. Pres. & Dev., 990 F.2d 1397 (2d Cir. 1993),[6] a claim is "reasonably related" if: (1) the conduct complained of would fall within the scope of the EEOC investigation for the explicit claims asserted in the complaint with the EEOC; (2) the conduct complained of is retaliation for the complaint filed with the EEOC; or (3) the conduct consists of incidents of discrimination "carried out in precisely the same manner alleged in the EEOC charge." Id. at 1401-03.

None of these "reasonably related" exceptions apply in this case. The first exception does not apply because the plaintiff's third complaint postdates the EEOC investigation of her first two complaints. Thus, the complained-of action did not and could not fall within the scope of that investigation. The second exception does not apply because the plaintiff does not argue in her papers that her transfer request was denied in

---

[6] Superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684 (2d Cir. 1998).

retaliation for the SDHR complaint.[7]  And the third exception does not apply because the defendant's rejections of the plaintiff's requests to transfer do not consist of incidents of discrimination carried out in the same manner as her previous EEOC complaints, which alleged that her transfer from Crossroads to 150 William was discriminatory and that the employment practices at 150 William were discriminatory.

Therefore, the plaintiff has not exhausted her administrative remedies with respect to the denials of her transfer requests.  This is an additional reason why the plaintiff cannot succeed on her claims relating to the denials of her transfer requests.

### CONCLUSION

The defendant's motion for summary judgment is **granted.** The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed, the arguments are either moot or without merit.  The Clerk of Court is directed to enter judgment in favor of the defendant

---

[7] The plaintiff mentions in the SAC that she was retaliated against for filing administrative charges against ACS.  (SAC at 9.)  However, the plaintiff appears to be referencing an earlier EEOC charge, not the January 2014 SDHR charge on which this action is premised.  Moreover, the plaintiff does not present any evidence on summary judgment showing that her transfer denials were in retaliation for filing the SDHR complaint.

dismissing the Second Amended Complaint. The Clerk is also

directed to close all pending motions and to close this case.

**SO ORDERED.**

**Dated:** **New York, New York**
**July 30, 2019**

_____

John G. Koeltl
United States District Judge